**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| BRIAN ALLEN | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| TRINITY VALLEY | § | |
| COMMUNITY COLLEGE | § | |
| | § | |
| *Defendant.* | § | |

---

### PLAINTIFFS' ORIGINAL COMPLAINT

---

NOW COMES Brian Allen, Plaintiff in the above-styled and numbered cause, and files this Original Complaint against Defendant Trinity Valley Community College. Plaintiff would respectfully show the Court the following:

### I. <u>THE PARTIES</u>

1.1    Plaintiff Brian Allen ("<u>Plaintiff</u>" or "<u>Professor Allen</u>" or "<u>Allen</u>") is an individual residing in Van Zandt County, Texas.

1.2    Defendant Trinity Valley Community College ("<u>Defendant</u>" or "<u>TVCC</u>" or "<u>the College</u>") is a college or college district organized under the laws of the State of Texas for the purpose of operating a community college system serving communities in several Texas counties, including all of Henderson County, most of Kaufman County, and parts of Anderson, Van Zandt, Hunt, and Rains counties. The address of Defendant's administrative office is 100 Cardinal Drive, Athens, Henderson County, Texas 75751. Defendant may be served with process by serving its President, Dr. Jason Morrison, at the foregoing address.

---

## II.  JURISDICTION AND VENUE

2.1    This Court has jurisdiction over this action under 28 U.S.C. § 1331 because one or more of Plaintiffs' causes of action is created by Federal law, arising from and through the First, Fourth, and Fourteenth Amendments to the United States Constitution, for which 42 U.S.C. §§ 1983 and 1988 provide Plaintiff standing and remedies. This court has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367.

## III.  FACTUAL BACKGROUND

3.1    Plaintiff Brian Allen was hired by Defendant TVCC in 2001 to teach Business Computer Information Systems ("BCIS") courses on its Terrell Campus. For the next two decades, he successfully taught BCIS computer science courses, along with occasional courses in his other area of specialization, psychology. He always met and exceeded expectations in his annual performance evaluations, and contributed to a vibrant campus life. In his most recent annual performance evaluation in Fall 2023, his direct supervisor, Terrell Campus Director Dr. Debra Airheart ("Dr. Airheart") wrote, "Mr. Allen is dedicated to building his classes to further help students be successful." Professor Allen enjoyed the respect of his students, and his faculty and staff colleagues acknowledged his teaching abilities as well as his unique ability to liven up campus meetings with whimsical jokes.

3.2    During the 2023-2024 academic year, TVCC offered Plaintiff Allen and other faculty the opportunity to teach courses on Friday nights and Saturdays as part of a new program targeting non-traditional students, including working students and parents of young children. The College represented to Professor Allen and other faculty that such courses would serve as extra overloads above the normal maximum number of overload courses faculty were permitted to teach. Because the instructors of such courses would be working on Saturdays, outside the normal

teaching workweek, they were promised additional stipend as well. Plaintiff was promised a total of $2200.00 for teaching the new course, including the normal $1750.00 overload compensation for the lecture portion of the course, plus a $300 stipend for working Saturdays, and a $150 stipend for the lab portion of the course. Relying on this promised compensation, Plaintiff agreed to give up his Saturdays during the Fall 2023 semester to teach the new course.

3.3      On or about September 7, 2023, approximately two weeks after he began teaching his Fall 2023 Saturday course, Plaintiff Allen checked his payment schedule in the College's MyCardinal Connect[1]. He discovered his promised stipend for the Saturday course was omitted from his overload pay schedule. He inquired about the matter to Dr. Airheart. Initially, Dr. Airheart denied that such stipend was ever promised, stating "We don't pay extra for weekend classes." Dr. Airheart nonetheless agreed to discuss the matter with Vice President of Instruction Dr. Kristin Spizzirri ("VPI Spizzirri"), but demanded Plaintiff produce proof the promise was ever made.

3.4      By way of proof, Plaintiff Allen shared a February 24, 2023, email from Dr. Airheart, written to Plaintiff and other Terrell faculty, stating that Plaintiff would be teaching a Saturday class in Fall 2023, and an excerpt from an email in which Associate Vice President of Academic Affairs Eric Richardson ("AVP Richardson") specified the stipend for teaching Saturday courses.

3.5      After Plaintiff provided proof of the promised stipend, Dr. Airheart informed him that the College had changed its overload policy, deciding to not award faculty the stipends for Saturday courses after all. TVCC faculty who were already teaching Saturday classes had no prior notice that such decision had been made, and Plaintiff, along with others, had already given up

---

[1] MyCardinal Connect is TVCC's online platform where faculty can access information such as their teaching schedules, pay statements, contracted salary and benefits, and manage student attendance and grading.

their Saturdays for the term based on the promised compensation. Plaintiff wrote back to Dr. Airheart, copying his program coordinator and faculty colleague, Dr. Donna Rial-Baker ("Dr. Rial-Baker"), stating "That's bait and switch."

3.6     Professor Allen proceeded to express his concerns via text messages to Dr. Rial-Baker, and via an email to Dr. Rial-Baker, Dr. Airheart, AVP Richardson, VPI Spizzirri, and TVCC President Dr. Jason Morrison ("President Morrison"). In his email, Plaintiff complained about TVCC's decision to suddenly change the pay schedule, months after he committed to teaching the class with the expectation of receiving compensation. He concluded the email by drawing a connection between his situation and Defendant TVCC's well-known low faculty morale problem - a matter of public concern – stating "This is exactly why the Faculty continues to mistrust the Administration."

3.7     On September 12, 2023, Professor Allen received a phone call from Dr. Airheart and Dr. Rial-Baker, wherein they berated Plaintiff for emailing President Morrison and the other administrators. During the call, Dr. Airheart told Professor Allen that President Morrison found his email unhelpful, and despite having acknowledged the stipend obligation, had decided not to pay it due to Plaintiff's "attitude." Dr. Airheart then instructed Plaintiff Allen that in the future, instead of airing his grievances directly to President Morrison, he should let her and the other supervisors handle such situations.

3.8     Plaintiff then received texts from two colleagues who had knowledge of conversations among administrators. Both colleagues told Plaintiff the administration agreed it owed him the unpaid stipend, but because his September 7, 2023, email angered President Morrison, Plaintiff would not be paid the money he was owed. Plaintiff reiterated to one of the two colleagues that he felt the College's initial decision to renege on its promise, and President

Morrison's subsequent retaliatory decision to not pay Plaintiff specifically, because he raised concerns over the non-payment and the issue's effect on faculty morale, reflected poorly on TVCC - a matter of public concern.

3.9    By early evening on September 12, 2023, Plaintiff Allen resolved to confront President Morrison directly over his reported anger and retaliatory action in denying Plaintiff his promised stipend. He emailed the President, writing "I was told my previous email 'made Dr. Morrison mad' and that is why TVCC won't recognize its mistake and honor its commitment to me. I am disappointed to hear this said about you." President Morrison replied back approximately 10 minutes later, stating "I am not sure who misinformed you. I do not recall being mad about an email."

3.10    After receiving the President's reply, Plaintiff again texted with his two colleagues, sharing his worry about future retaliation from anyone involved in the Saturday stipend matter, including VPI Spizzirri and the College itself.

3.11    Later that evening, Plaintiff Allen followed-up on the earlier phone call in an email to Dr. Airheart, copying Dr. Rial-Baker:

> When we talked, you said to Donna and me, 'Brian the last line of your email made Dr. Morrison mad and nothing could be done now to resolve this. Before that email, things might have been possible, but they aren't now.' Did Dr. Morrison tell you this personally, or was it relayed to you? The last line of the email that you are referencing states: 'This is exactly why the Faculty continues to mistrust the Administration.'

Dr. Airheart replied, "This is not a discussion to have through email," and advised Plaintiff the person he needed to talk to about the Saturday class was VPI Spizzirri.

3.12    The next day, Plaintiff emailed Dr. Airheart again, trying to get to the truth about the President's alleged anger and the decision to single Allen out for retaliation, but she did not respond. He followed-up later in the day with another email, this time detailing his concern over

the appearance of retaliation by President Morrison and TVCC. Dr. Airheart ignored that email, as well.

3.13    When Professor Allen referred to TVCC faculty morale issues and lack of trust in the administration, he was raising topics which were already on TVCC and President Morrison's radar. TVCC had hired consulting companies to assess various aspects of the College, and around this time the consultants were holding focus groups with TVCC faculty and staff. Plaintiff served as a member of one of those faculty focus groups, which met to discuss the issue of the low morale among TVCC faculty. Professor Allen raised his concern over the College's abrupt and retroactive policy change regarding the Saturday stipends in the focus group - a matter of public concern considering it involved misuse of taxpayer funds, and certainly constituting a contributing factor to TVCC's growing faculty morale problem. On information and belief, Plaintiff's outspokenness to the focus group came to the attention of TVCC's administrators.

3.14    Unable to obtain payment of his promised Saturday stipend, and having been told that the stipend was being withheld because of his "attitude," Plaintiff next filed a formal grievance against President Morrison.

3.15    On September 13, 2023, Plaintiff emailed Human Resources Director Janene Dotts ("HR Director Dotts"), informing her he wished to initiate formal grievance proceedings against the President. HR Director Dotts purported to empathize with Plaintiff, telling him his claim was valid, and he would be protected from any retaliation. She offered to speak with President Morrison about the unpaid stipend - but not about Plaintiff's retaliation allegations - on his behalf. With her assurance that he would not face reprisals, Plaintiff filed his formal grievance against President Morrison on or about September 15, 2023, (1) aiming to secure his unpaid Saturday stipend, and (2) seeking to prevent, in the future, other faculty from having to face retaliation by TVCC, as he

had, for raising concerns over matters of public concern. Because the grievance was against the President, Vice President of Administrative Services and Chief Financial Officer David Hopkins oversaw review of the grievance, in collaboration with HR Director Dotts.

3.16    Plaintiff's grievance over the unpaid stipend was ultimately upheld, and he finally received his overdue stipend. Another faculty member also received retroactive pay for an overdue stipend, thanks to Plaintiff's grievance. However, Defendant TVCC refused to recognize that any prohibited retaliation took place by President Morrison, or by any other administrators. Defendant TVCC's unwillingness to hold itself accountable further frustrated Plaintiff, amplifying his fear of future retaliation and prompting him to raise yet another matter of public concern – Defendant TVCC's administrators supporting and enforcing unlawful, retaliatory behavior by a taxpayer-funded College President.

3.17    On September 19, 2023, Plaintiff Allen wrote to HR Director Dotts, stating,

Exonerating Dr. Morrison means others have slandered him, lied to me, retaliated against me, denied my valid complaint, and had EVERY intention of making me feel ashamed of myself for standing up. Because, if part 2 [the allegation of retaliation against President Morrison] is simply closed and Dr Morrison is found to NOT have retaliated, am I right back at the beginning and filing gr[ie]vances against the multiple VP, AVP, Campus Director, and Faculty Lead that were complicit in either direct retaliation against me, or for colluding to enact a retaliatory action from 'Dr Morrison'? At the end of the day, it was made clear to me that I was responsible for causing this harm to myself. When this all began, I told other faculty about Dr Morrisons retaliatory actions. […] If this ends with nothing more than, "Dr Morrison is innocent", then I am going to be left hung out to dry by all the same direct supervisors. […] A competent administrator, with faculty support in mind, should have IMMEDIATELY reached out to me and walked with me to your office to stop Dr. Morrison[']s retaliation. Failing to recognize the retaliation, and even supporting and enforcing the action, should disqualify an administrator from holding their position.

3.18    On October 23, 2023, HR Director Dotts informed Plaintiff that while his grievance process was now "over," there would be "planned follow up conversations with respect to the

issues we discovered through the course of the investigation with the individuals that were involved." On information and belief, those individuals were VPI Spizzirri and AVP Townsend. VPI Spizzirri was dismissed from the College within a couple days of the conclusion of Plaintiff's grievance[2].

3.19    At that point, Plaintiff believed the matter of his Saturday stipend to be resolved. Professor Allen taught another successful Saturday course in Spring 2024, this time receiving his stipend as promised. Plaintiff delighted in the success of his Saturday BCIS program. His Saturday course offerings were the first in TVCC's history to run back-to-back semesters, demonstrating the viability of his Saturday program, the high student demand, and his excellence as a professor. With his Saturday program's success, Professor Allen moved forward to plan a Fall 2024 Saturday schedule, collaborating with other faculty to expand the program.

3.20    Plaintiff Allen's enthusiasm over his Saturday program's success was premature. In an email from his Department Chair Robert Brittain ("Chair Brittain"), Plaintiff learned AVP Richardson and AVP Townsend had reduced his Fall load of classes, and canceled his Saturday courses for Fall 2024 altogether, despite the success of his 2023-2024 Saturday courses, which had excellent student success rates and student evaluations. Defendant TVCC, through AVP Richardson and AVP Townsend, provided inconsistent and untruthful explanations for the cancellation, citing excuses such as a need for "rotation and variety," devoid of any data and unbacked by policy. In reality, the administrators' explanations as to why Plaintiff's Fall 2024 BCIS Saturday courses were removed were pretextual for Defendant TVCC's real motive – unlawful retaliation.

---

[2] TVCC dismissed AVP Townsend a few months later.

3.21    In a January 25, 2024, email to Chair Brittain, Plaintiff relayed his suspicion that his Fall class cancellations were retaliatory for his prior grievance against President Morrison and his raising issues of public concern. The next day, Plaintiff wrote directly to AVP Richardson and AVP Townsend, demanding answers as to why the College targeted only *his* Saturday classes for removal, and relating how the College's disregard of his ambition and success in advancing the Saturday program fit into the larger picture of why TVCC faculty were unhappy and felt disenfranchised by the administration.

3.22    After AVP Richardson wrote back with yet another excuse as to why Plaintiff's Saturday Fall 2024 classes were removed – this time that the Fall schedule was not finalized yet – Plaintiff Allen sent another email directly to AVP Richardson, AVP Townsend, Dr. Airheart, and Chair Brittain, calling them out for their pretextual excuses for retaliation:

> *Who is not telling me the truth about my Fall Saturday class? It is only one of two choices. I was lied to before, or I am being lied to now.* […] Every single time I try to add Saturday classes I get another line of changing reasons for why *I* am not allowed to do it.

Plaintiff then reached back out to HR Director Dotts, relaying what transpired and that he was now firmly convinced the removal of his Fall 2024 Saturday class was "payback for the grievance," alleging that responsibility for the retaliation most likely lay with VPI Spizzirri. In his email, Plaintiff wrote

> It was well known that [VPI Spizzirri], [AVP Townsend] and [AVP Richardson] were close friends. They were often referred to as 'a cabal. […] I fully expect they will torpedo my class requests, require I teach an onerous schedule, block my overloads, and take more steps to make my career here at TVCC as miserable as possible.

Plaintiff was wrong. Defendant TVCC and its administrators did not simply make his career at TVCC "as miserable as possible." In retaliation for Plaintiff's protected activities, they altogether ended it.

3.23     On May 15, 2024, Plaintiff Allen received a Letter of Non-Renewal, signed by President Morrison, which terminated his 23-year career at Defendant TVCC. The letter offered no explanation for the non-renewal other than "Trinity Valley Community College ("TVCC") has decided to allow your current contract to expire by its own terms on May 31, 2024. […] TVCC has determined that this decision is in the best interest of the college and its students."

3.24     Defendant TVCC did not confine its retaliatory non-renewal to the letter. The next day, TVCC Chief of Police Heath Cariker issued Plaintiff a Trespass Warning letter, declaring that as of May 15, 2024, his presence on any Trinity Valley Community College District property was prohibited for two years, and if he remained or returned to TVCC's public property without prior permission of the police chief or his designee, he would be arrested and charged with criminal trespass.

3.25     Under Texas law, Defendant TVCC's policies were automatically incorporated into Plaintiff Allen's employment contract, including its policy prohibiting retaliation against faculty for raising concerns and filing good-faith grievances. By canceling Plaintiff's Saturday program, reducing his Fall 2024 load, ending his employment, and issuing him a trespass notice, Defendant TVCC breached Plaintiff's employment contract. Additionally, and alternatively, these actions violated Plaintiff's First Amendment right to free speech and right to petition for a redress of grievances, and violated his Fourth Amendment rights against unreasonable searches and seizures. In conducting these retaliatory deprivations of Plaintiff's liberty and property interests without procedural due process, Defendant TVCC also violated Plaintiff's rights under the Fourteenth Amendment.

3.26     As a direct and proximate result of Defendant TVCC's wrongful actions, Plaintiff has suffered severe financial harm to himself and his family. On account of Plaintiff's damaged

reputation, he has been unable to secure full-time employment for the past year. Such long-term absence has further harmed his reputation and prospects for future employment in academia. Because of the financial hardship caused by Defendant TVCC's unlawful retaliation and resulting violations of Plaintiff's rights, to survive, Plaintiff Allen was forced into early retirement at the age of 54, despite his desire to continue teaching and working in his field. Defendant TVCC has caused Plaintiff Allen financial, emotional, and reputational harm, for which he brings this suit for all available relief.

## IV.  CAUSES OF ACTION

4.1    **Alternative Pleadings.** To the extent necessary, each of the claims set forth below is pleaded in the alternative, and all allegations contained in each count below are incorporated into each other count by this reference. Further, to the extent necessary, all allegations set forth above in Section III: Factual Background (paragraphs 3.1 through 3.26) of this Complaint are hereby referenced and fully incorporated in each of the claims below by this specific reference, as though set forth in full.

### *Federal Claims: 42 U.S.C. § 1983 – Deprivation of Plaintiff's Liberty and Property Interests without Due Process, in Violation of the First, Fourth, and Fourteenth Amendments*

4.2    Acting under color of law, all actions and decisions violative of Federal statutes and the United States Constitution complained of herein were done by Defendant Trinity Valley Community College's policymakers – its Board of Trustees, President, and administrators. Pursuant to Tex. Educ. Code § 130.082, TVCC's Board is the final policymaker regarding faculty employment. It adopts policies, enacts regulations, and establishes general rules necessary for the operation of its campuses *Id.* at § 130.040. Alternatively, the College's actions were done by persons to whom the Board delegated final decision-making and policymaking authority.

4.3     The policymakers described in this Complaint were central figures in the deprivation of Plaintiff Allen's constitutional rights and the retaliation against him for exercising or seeking to exercise those rights. Plaintiff's state law property interest in his employment contract, his continued employment and salary, his liberty interests in his constitutional rights, his reputation, and his access to TVCC public property were deprived without due process by Defendant's non-renewal of Plaintiff's employment contract and trespass notice, imposed without notice or hearing, in violation of his Fourteenth Amendment rights.

4.4     The deprivation and retaliation proximately caused Plaintiff damages, including lost wages, denial of benefits, coerced early retirement, reputational harm, emotional distress, and litigation costs. Plaintiff Brian Allen brings this action to recover compensatory damages for these injuries, punitive damages if appropriate, injunctive relief in the form of reinstatement and annulment of his trespass notice, nominal damages, if applicable, additional equitable relief as necessary to address these wrongs, and attorneys' fees.

### Count 1: Violation of the Fourteenth Amendment Brought Pursuant to 42 U.S.C. § 1983 - Deprivation of Property Interest without Procedural Due Process

4.5     Defendant TVCC deprived Plaintiff Allen, a successful full-time computer science and psychology instructor of 23 years, of his Fourteenth Amendment due process rights under the United States Constitution. As set forth above and in Section III: Factual Background, without any form of procedural due process, Defendant stripped Plaintiff of his property interests in his promised Saturday classes and associated promised stipend, his entitlement to his continuing employment and salary, breached his contract, and violated his First and Fourth Amendment rights.

---

4.6    In Spring 2023, TVCC promised its full-time faculty, including Plaintiff, a stipend beyond routine overload pay in exchange for teaching a class on Saturdays. Plaintiff accepted Defendant's stipend offer, and began teaching a Saturday class in Fall 2023. Well after the class commenced, Defendant denied Plaintiff the promised stipend. Plaintiff notified his supervisor, Dr. Airheart, who simply rationalized the non-payment as the result of a new, unannounced policy change. In retaliation for his complaints and grievance, (which ultimately forced TVCC to pay Plaintiff, as promised, for teaching a Saturday class), Defendant removed Plaintiff's Fall 2024 Saturday classes and reduced his regular teaching load under false pretenses, despite the popularity of his classes with students.

4.7    Then, on May 15, 2024, without notice, warning, or due process, and in retaliation for exercising his First Amendment rights, Defendant notified Plaintiff that he was being non-renewed. Plaintiff's access to college online platforms, including email, was immediately revoked; further, with no due process, no cause, and no history of any complaints against Plaintiff, the College's Chief of Police issued Plaintiff a criminal trespass notice, forbidding him from entering TVCC property– public property partly funded by his own taxes – for two years, under penalty of arrest.

4.8    These actions complained of herein – delayed compensation, reduction of duties and income, nonrenewal, removal of access, and a trespass notice – without any procedural due process, deprived Plaintiff of property interests in violation of his Fourteenth Amendment rights, for which 42 U.S.C. § 1983 provides a mechanism to recover damages. For the violation of his Fourteenth Amendment rights, as part of the other claims asserted in this action, Plaintiff seeks all damages stemming from his non-renewal, including but not limited to injunctive relief through

reinstatement to his former academic position, rescission of the trespass warning, attorneys' fees, and nominal damages, as appropriate, for denial of due process.

### Count 2: Violation of the First and Fourteenth Amendments Brought Pursuant to 42 U.S.C. § 1983 – Denial of Liberty Interests in Freedom of Speech and Right to Petition a Governing Body for a Redress of Grievances

4.9     As set forth in Section III, Defendant TVCC, through its policymakers, including its Board of Trustees, President, and administrators, violated Plaintiff's First Amendment rights to free speech and right to petition a governing body for a redress of grievances, actionable under 42 U.S.C. § 1983, by depriving him, without due process as guaranteed under the Fourteenth Amendment, of his liberty interest in these rights. Plaintiff, after 23-years as an instructor at a public institution, exercised his First Amendment rights by emailing President Morrison, raising concerns with colleagues and Defendant's hired consultants, and filing a formal grievance against the President for retaliation and rescission of a promised stipend for teaching his popular Fall 2023 Saturday class. As set forth above, when TVCC withheld the stipend, Plaintiff, in discussions with consultants hired by the College, in his emailed complaints to administrators, and in his formal grievance against President Morrison, related the issue of his unpaid stipend to the publicly-important matters of TVCC's low faculty morale, the faculty's distrust of its administration, and TVCC's acceptance of the unlawful retaliation practiced by the College President and administration.

4.10     As a professor, Plaintiff served as a public watchdog, speaking as a citizen through established channels – emails, grievance processes, and a focus group – distinct from his official duties. His watchdog role rendered his speech inherently valuable when addressing matters of public concern best known by those within the public institution. Plaintiff addressed matters of public concern by publicly highlighting, to faculty colleagues, administrators, and a hired

consulting group, the College's historical pattern of failing to pay promised amounts to faculty, and the pervasive and well-known culture of retaliatory actions by administrators against faculty who dared question administrators' decisions and raise complaints. Plaintiff Allen, verbally and in writing, tied these concerns to Defendant's public efforts to address low faculty morale, faculty distrust of the College's administration, and administrator support and endorsement of unlawful retaliation - implicating institutional integrity and educational quality. Inarguably, these issues constitute matters of public concern.

4.11    Plaintiff's speech, which includes his right to petition, satisfies the *Pickering* standard, protecting public employee speech when (1) it addresses matters of public concern, and (2) the employee's interest in speaking outweighs the employer's interest in workplace efficiency (*Pickering v. Bd. of Educ*., 391 U.S. 563 (1968)). Plaintiff's speech was of public concern because it directly linked to broader issues of import to citizen taxpayers: faculty morale and widespread distrust of TVCC's administration, misuse or sleight of hand regarding public funds, administrator support and endorsement for a College President's unlawful retaliatory acts against professors for exercising their freedom of speech and right to petition, and general institutional integrity at a publicly-funded community college.

4.12    Plaintiff's speech satisfies the second prong of the *Pickering* balancing test, as his interest in addressing public concerns outweighed the College's efficiency interests – which here are nonexistent. Plaintiff Allen's expression and petitions caused no disruption to the institution – his classes thrived with excellent student evaluations, and no operational impact was documented. Yet, despite HR Director Dotts' assurances of no retaliation, Defendant TVCC retaliated for Plaintiff's protected activities by removing his Fall 2024 Saturday classes under false pretenses, reducing his Fall 2024 regular teaching load, non-renewing his contract on May 15, 2024, and

issuing a two-year criminal trespass notice barring him from public college property without due process. These actions, driven by President Morrison's fury over Plaintiff Allen's "attitude," suppressed his First Amendment rights. The trespass notice and non-renewal, imposed without notice or hearing, further deprived Plaintiff of his liberty interest in exercising his First Amendment rights.

4.13    The *content, form,* and *context* of Plaintiff's speech firmly establish its protection under *Pickering*, addressing matters of public concern amid widespread faculty mistrust of the College's administration. The ***content*** of Plaintiff's speech – explicitly linking the non-payment of his Saturday stipend to Defendant TVCC's systemic failure to honor faculty commitments and its entrenched culture of unlawful retaliation, evidenced by a pattern of administrators supporting and endorsing the President's retaliatory actions against faculty exercising their First Amendment rights – directly implicated institutional integrity and the quality of education as a taxpayer-funded community college. The ***form*** of Plaintiff's speech, encompassing emails proclaiming his concerns to the College's President, his formal grievance filed against the President through established channels, and contributions to a consultant-led focus group, was constructive, non-disruptive, and aligned with his role as a citizen-watchdog, amplifying concerns about administrative accountability and educational standards. The ***context*** of Plaintiff's speech, rooted in the College's public efforts to address pervasive faculty morale issues and distrust of the administration, elevated its relevance to taxpayers and stakeholders invested in the institution's governance and educational mission. Defendant TVCC's draconian retaliation, including his non-renewal and baseless two-year criminal trespass notice, not only silenced Plaintiff, but also exacerbated the chilling effect on free speech across the institution.

4.14    Defendant TVCC's unconstitutional actions inflicted profound harm to Plaintiff, robbing him of his livelihood and barring him from campus; a public space. In doing so, Defendant effectively forced Plaintiff into early retirement at age 54. Unable to secure comparable employment, Plaintiff endured significant financial strain and emotional suffering. To remedy this violation of his First Amendment rights, Plaintiff requests nominal and compensatory damages, as appropriate, judicial declaration recognizing the infringement, and an injunctive order restoring his prior academic position and lifting the trespass restrictions, necessary equitable measures, and coverage of his legal fees.

### Count 3: Violation of the Fourth and Fourteenth Amendments Brought Pursuant to 42 U.S.C. § 1983 – Restraint of an Individual's Freedom of Movement

4.15    The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures, safeguarding an individual's right to personal security and freedom of movement. This protection applies to a private citizen's access to public property, prohibiting state actors from imposing arbitrary restrictions without due process or lawful justification. A criminal trespass notice issued by a public institution, such as Defendant TVCC, restricting a citizen's access to publicly funded property without evidence of misconduct or procedural fairness, constitutes an unlawful seizure, violating the citizen's Fourth Amendment constitutional right to freely access such spaces.

4.16    As set forth above in the preceding paragraphs of this Complaint, the violations of Federal statutes and the United States Constitution complained of and incorporated herein were done by state actors – TVCC, the Board, the President, and administrators – policymakers of the College, acting under color of law.

4.17    Defendant TVCC issued Professor Allen a criminal Trespass Warning through the College's Chief of Police, prohibiting him from accessing College property. The notice, delivered without due process, constitutes an unlawful deprivation of Plaintiff's Fourth Amendment rights by severely restricting his freedom of movement. The actions of TVCC's police department, in issuing this directive, would communicate to a reasonable person, including Plaintiff, that compliance was mandatory, effectively seizing his ability to move freely on public property funded in part by his own tax dollars.

4.18    Prior to the criminal trespass notice, Plaintiff, as a professor, fulfilled his professional responsibilities on TVCC's grounds. As a private citizen, Plaintiff Allen enjoyed access to College events and facilities. The notice prohibits Plaintiff Allen from now engaging in these activities without prior permission from the College's police chief or his designee, despite the absence of any formal or informal complaints against him. The scope of the trespass notice is unreasonably broad and excessive, equating to a Fourth Amendment seizure by curtailing Plaintiff's ability to participate in personal activities to which he is entitled, unrelated to his prior employment with the College. Plaintiff's non-renewal from his faculty position does not justify such sweeping restriction on his rights as a citizen to access public property.

4.19    By drastically limiting Plaintiff's movement and access to TVCC property, Defendant caused him significant harm, including emotional distress, loss of access to community resources, and damage to his personal and professional standing. For this Fourth Amendment violation, Plaintiff seeks relief for the resulting injuries through compensatory damages, declaratory judgment acknowledging the unconstitutional act, and injunction rescinding the criminal trespass notice, appropriate equitable remedies, and attorneys' fees, as part of his broader claims in this action.

*Pendant State Law Claim*

**Count 4: Breach of Contract**

4.20    Under Texas Law, the policies of Trinity Valley Community College were part of Plaintiff's employment contract. By entering into such contract, both parties became obligated to comply with TVCC Board policies. Plaintiff Allen most recently signed his regular 9-month employment contract with TVCC in September 2023 after having signed 9-month annual employment contracts with Defendant TVCC each fall semester prior, for the past 23 years.

4.21    As part of its duty to comply with its policies, TVCC was required to adhere to Board policy DGBA(LOCAL). DGBA(LOCAL) compelled TVCC to follow specific procedures for processing Plaintiff's concerns and complaint against President Morrison, and mandated TVCC protect Plaintiff from reprisal for effecting such grievance, which he executed in good faith. DGBA(LOCAL)'s "Freedom from Retaliation" subsection states

> "Neither the Board nor any College District employee shall unlawfully retaliate against an employee for bringing a concern or complaint in good faith. Fraudulent complaints or those brought in bad faith may result in discipline, up to termination."

4.22    As set forth in Section III above, Defendant TVCC failed in its duty to protect Plaintiff Allen from retaliation. It did so by (1) permitting Plaintiff's immediate supervisor, Dr. Airheart, to reprimand Plaintiff for having complained to President Morrison over the non-payment of his Saturday course stipend, (2) permitting administrators AVP Richardson and AVP Townsend to cancel Plaintiff's Saturday classes from the Fall 2024 schedule and reducing his Fall 2024 regular load, (3) non-renewing him, ending his 23 year stellar academic career, (4) issuing Plaintiff a criminal no trespass notice, barring him from stepping foot on TVCC public property for two years under penalty of arrest, and (5) depriving him of his property interests, without due process, in his entitlement to continue in his academic position and associated pay.

4.23    Defendant TVCC's conduct constituted breach of Plaintiff's employment contract. After failed attempts to remedy the situation up the chain of administrative command, Plaintiff Allen emailed his concerns over the non-payment of his stipend to TVCC President Morrison. The President, angered by Plaintiff's' brazenness in complaining directly to him, decided to withhold Plaintiff's owed pay on account of his "attitude," despite President Morrison admitting Plaintiff was owed the money. Plaintiff Allen then filed a formal grievance against the President, and was successful in finally being paid his owed stipend; nonetheless, Defendant TVCC exonerated the President, then retaliated by canceling Plaintiff's scheduled Saturday courses, reducing his course load, and ultimately non-renewing his contract without cause or hearing and issuing him the no trespass notice. These actions violated the College's anti-retaliation policy, breaching Plaintiff's contract.

4.24    As a proximate result of Defendant breaching his contract, Plaintiff has suffered lost back pay and benefits, future pay and benefits, and emotional distress. Defendant's actions caused Plaintiff irreparable harm to his reputation, such that for over a year now, he has been unable to secure comparable employment - or any full-time employment at all - forcing him into early retirement at age 54. Plaintiff Allen seeks compensatory damages, declaratory relief affirming the breach, injunctive relief for reinstatement and trespass notice rescission, attorneys' fees, and equitable relief.

## V.  <u>REQUESTED RELIEF</u>

5.1    As the direct and/or proximate result of Defendant TVCC's actions complained of herein, Plaintiff has been damaged and seeks recovery of the full measure of relief and damages against TVCC permitted by law, including but not limited to actual and/or economic damages, nominal damages, if applicable, damages for mental and physical anguish and emotional distress,

compensatory damages within the jurisdictional limits of this Court, and all equitable relief, including reinstatement and rescission of the trespass notice, to which he may be entitled.

## VI.  FEES, COSTS, AND INTEREST

6.1     Plaintiff has retained the law firm of Hill Gilstrap, P.C. to represent him in connection with this matter, and has agreed to pay the law firm its reasonable and necessary attorneys' fees and costs in connection with such representation. Without waiving and/or limiting any other relief requested, Plaintiff seeks to recover his reasonable and necessary attorneys' fees and costs incurred and to be incurred in bringing this suit and in all appeals of this suit, as permitted by law or in equity, specifically including 42 U.S.C. § 1988, applicable to Plaintiff's constitutional claims, and TEX. CIV. PRAC. & REM. CODE § 38.001 *et seq*., applicable to Plaintiff's breach of contract claim.

6.2     Plaintiff is also entitled to and seeks to recover costs of court, expert witness fees, and pre-judgment and post-judgment interest at the maximum rate permitted by law.

## VII.  CONDITIONS PRECEDENT

7.1     All conditions precedent to the Plaintiff's recovery on the claims alleged herein have been performed or have occurred.

## VIII.  DEMAND FOR JURY TRIAL

8.1     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a jury trial and has tendered, or will tender, the requisite fee.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that upon final hearing, Plaintiff recover judgment against Defendant and be awarded:

(a) any and all amounts recoverable and/or recognizable as damages under law and/or in equity, resulting and/or occasioned by the wrongful acts and/or conduct of Defendant TVCC (as set forth above more specifically), including both actual and nominal damages;

(b) reinstatement of his employment and rescission of the criminal trespass notice;

(c) his litigation expenses and costs, including but not limited to his attorneys' fees and costs and any applicable expert fees, against Defendant TVCC;

(d) costs of court, pre-judgment and post-judgment interest, at the maximum rate as allowed by law; and

(e) such other and further relief, both general and special, at law or in equity, to which he may be justly entitled.

Respectfully submitted,

/s/ Frank Hill
Frank Hill – SBN 09632000
fhill@hillgilstrap.com

Stefanie Klein – SBN 11565650
sklein@hillgilstrap.com
HILL GILSTRAP, P.C.
1400 West Abram Street
Arlington, Texas 76013

**ATTORNEYS FOR PLAINTIFF BRIAN ALLEN**